[Civ. No. 45803. Second Dist.. Div. Five. July 21. 1975.]

COLWELL COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
FLORENTINE G. BOERNER et al., Real Parties in Interest.

**Counsel**

Meserve, Mumper & Hughes, Cromwell Warner, Jr., Roy L. Herndon and L. Allan Songstad, Jr., for Petitioner.

John H. Larson, County Counsel, and Frederick R. Bennett, Deputy County Counsel, for Respondent.

Patricia Herzog for Real Parties in Interest.

**Opinion**

**ASHBY, J.**—Petitioner (Colwell) is the defendant in a class action complaint brought by the real parties in interest (plaintiffs) on behalf of themselves and other persons similarly situated who in payment for the construction of mountain cabins executed lien contracts and deeds of trust which were assigned by the builders to Colwell. Colwell has purchased more than 1,800 contracts similar to those of plaintiffs, representing a total value in excess of $27 million.

In April 1973 Colwell made a motion to bifurcate the issues of class determination and liability in order to obtain an early trial on the issues of liability. The motion was made on the following grounds: (1) if the usual class action notice requirement were followed, the likelihood of

Colwell's continuing to receive payment on the contracts would be reduced and its business could be destroyed before the issue of liability could be resolved; (2) the goodwill and relationship of trust with builders in the mountain communities which has been established and presently exists could be immediately destroyed before the liability question could be determined; and (3) plaintiffs have asserted a theory of liability which is both novel and of doubtful validity.

Colwell and plaintiffs entered into a stipulation to bifurcate the trial and try the issue of liability prior to determining the class action issues. The trial court approved the stipulation and ordered the trial bifurcated on June 27, 1974. The matter was set for trial on October 21, 1974, but continued on the court's own motion to January 16, 1975. The trial court on its own motion raised the question of whether the order for bifurcation was lawful and proper, and after hearing vacated that order on January 17, 1975. Colwell thereupon petitioned this court to compel the trial court to try the liability issue first in compliance with the original order for bifurcation.

The trial court in vacating the order of bifurcation considered itself compelled to do so by the decision in *Home Sav. & Loan Assn.* v. *Superior Court,* 42 Cal.App.3d 1006 [117 Cal.Rptr. 485]. That conclusion is erroneous. A primary purpose of the notice requirement of Federal Rules of Civil Procedure, rule 23, which in effect was adopted by the court in *Home Savings,* is to advise members of a class, as soon as practicable after it is determined that an action may be maintained as a class action, that they may be excluded from the class if they request exclusion; but if they are not excluded, they will be bound by the judgment whether it be favorable or unfavorable to the class. *Home Savings* merely enforced the defendant's "right" to a judgment binding on all members of the class not excluded. In *Home Savings* the defendant insisted upon that protection and objected to a determination of liability prior to resolving the class action issues. In the instant case Colwell has chosen to waive the protection of a judgment binding on all members of the class. *Home Savings* does not preclude bifurcated trials where the defendant is willing to forego the protections against "one-way intervention."

*Katz* v. *Carte Blanche Corporation* (3d Cir. 1974) 496 F.2d 747, is directly in point. There the defendant, Carte Blanche, sought to have liability established prior to the sending of notice to the class. Carte Blanche argued that the sending of notice could have a catastrophic

effect, causing substantial numbers of members to withhold payments. It further argued that if members who withheld payments were to opt out of the class action, then, in order to recover those payments, it would be required to file a compulsory counterclaim under rule 13(a) of the Federal Rules of Civil Procedure which would be disruptive of its normal collection practices, and of its relations with its members. The court in holding that the liability issue could be tried first notwithstanding rule 23, stated in regard to the defendant, at page 762: "[I]t must be understood that we are dealing only with the defendant who declines the protection against one-way intervention after a violation has been proved which rule 23(b)(3) was designed to afford. If a class action defendant insists upon early class action determination and notice, he is, under the rule, entitled to it. But where he makes a nonfrivolous claim that his business will be harmed or disrupted by the notice, and is willing to run the risk that the determination of liability, if he loses, will be given effect in favor of the class, with notice in the event of such determination, the district court must seriously consider that alternative, and should, absent other compelling circumstances, pursue that course. A defendant taking such a position would, of course, be deemed to have waived any seventh amendment right to a unitary trial before a single jury on all issues, and would realize that the statute of limitations was tolled in favor of the class. He would lose, as well, the collateral estoppel effect against the class of a favorable judgment on liability." (Fn. omitted.)

In regard to possible prejudice to members of the class, the court said the following: "Postponement of class action determination until the violation has been proved in no way prejudices the potential class members. If Katz loses his case on violation they will not be bound. If Katz establishes the violation they can be afforded the same opting out option, but the notice will advise them that there is a judgment establishing violation, and their decision will be more informed than if the notice was sent early in the proceedings. The only real potential for harm to the absent class members, the running of the statute of limitations, once thought to be a possible problem, has been eliminated by the holding in American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), that the filing of a class action complaint tolls the running of the statute of limitations for the entire class." (*Katz* v. *Carte Blanche Corporation, supra,* 496 F.2d at pp. 760-761.)

Plaintiffs cite *Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140], for the proposition that it is impermissible to

determine the merits of a class action prior to the trial of the class action issues.[1] *Eisen,* however, did not consider the question before us. *Eisen* merely held that the trial court could not conduct a preliminary mini-hearing on the merits of the class action for the purpose of apportioning the costs of notice on the basis of which party was more likely to prevail on the merits. (See *Haas* v. *Pittsburgh National Bank* (W.D.Pa. 1974) 381 F.Supp. 801, 805.)

No legal detriment accrues to the class by permitting a determination of the liability issues first. All risk is taken by Colwell and none by the potential class members. Proceeding in a bifurcated trial and considering the liability issue first is proper when the defendant requests such a procedure.

The alternative writ is discharged. Let the peremptory writ issue ordering superior court to vacate its order of January 17, 1975, and to reinstate its order of June 27, 1974.

Kaus, P. J., and Loring, J.,* concurred.

---

[1]Plaintiffs stipulated to a bifurcated trial and their present opposition does not indicate that they seek to void that stipulation. At oral argument plaintiffs' counsel indicated a concern that failure to oppose the petition might be a violation of their fiduciary duty to potential class members.

*Assigned by the Chairman of the Judicial Council.