Filed 1/13/21  Allen v. MacIntosh CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| MARILYN ALLEN<br>   Cross-complainant and<br>      Respondent, | E073408 |
| v. | (Super.Ct.No. CIV217431) |
| BARBARA G. MACINTOSH,<br>   Cross-defendant; | OPINION |
| LIREN WANG et al.,<br>   Real Parties in Interest and<br>      Appellants. | |

APPEAL from the Superior Court of Riverside County.  John N. Nguyen and Irma Poole Asberry, Judges.[1]  Affirmed.

---

[1] Judge Asberry heard and granted the motion to cease/desist encroachment matter on June 11, 2019.  Judge Nguyen heard and denied the motion for attorney's fees on August 26, 2019.

1

Liren Wang, et al., in pro per., for Real Parties in Interest and Appellants.

Law offices of J. Steven Kennedy and Steven Kennedy for Cross-complainant and Respondent.

Liren Wang[2] appeals from an order compelling him to cease and desist trespasses on a portion of a parcel of land owned by him, which portion is dedicated for use as a pet cemetery, and from an order denying his motion for attorney's fees incurred in opposing the motion for attorney's fees filed by Marilyn Allen, an interested party and owner of a pet interred in the pet cemetery plot. Wang complains that laches should have been applied to bar Allen's application for the cease and desist order, and claims that because the trial court had denied Allen's motion to amend attorney's fees, he was the prevailing party, entitled to his own attorney's fees. We affirm.

## BACKGROUND

This case was borne out of a conditional use permit and declaration of dedication for a portion of land originally owned by the late Josephine Fisher, dedicated for use as a pet cemetery, which was later acquired by Barbara MacIntosh in 1991. Fisher did not disclose to MacIntosh the dedication. In 1991, Marilyn Allen, an owner of burial plot in the pet cemetery, provided MacIntosh with a copy of the dedication, and MacIntosh, in turn, filed two lawsuits: one against Fisher to void the declaration of dedication and the conditional use permit issued by the City of Lake Elsinore restricting the property to a pet

---

[2] The notice of appeal was filed on behalf of Wang and one Hui Jhou (spelled as Zhou throughout the record), but Zhou has abandoned the appeal. We decide this case as to Wang, only.

cemetery, and one against the title company that failed to discover the use dedication. Allen appeared in that action as a cross-complainant to protect her interests as a pet owner.

In settlement of that suit, in 2002, the parties executed a settlement agreement, by which the original dedication was voided, and Covenants, Conditions and Restrictions (CCRs), permanently restricting the use of that portion of the land to use as a pet cemetery in perpetuity, and binding on all owners present and future, were agreed to. Other terms of the settlement agreement, also incorporated into the CCRs, included a provision for the construction of a fence surrounding the pet cemetery, which would have gates for which pet owners would have keys to facilitate access to the pet cemetery. Other provisions related to maintenance, landscaping, repair and upkeep of the pet cemetery.

The CCRs specified that they constituted an equitable servitude and that all of the CCRs shall run with the land. The CCRs were duly recorded pursuant to the settlement agreement and judgment, and provided that all persons identified as pet owners (as well as their heirs, etc.) would have all the protections afforded by Health and Safety Code section 9700, and provided that the provisions of that section shall not be used by any owner of the property to change the use of the pet cemetery. Further, the agreement provided that the portion of the property designated as "Pet Cemetery" shall be permanently restricted to use as a pet cemetery, and that a conditional use permit would

3

be obtained by the parties to allow such use in perpetuity.  The agreement permitted the development of other portions of the land designated as vacant land.

Paragraph 12 of the judgment provided that pet owners as well as the City of Lake Elsinore have the right to enforce the agreement; a similar provision was included in the CCRs.  Paragraph 17 provided that any owners would cause maintenance to be performed without parking any vehicles over the area were pets are buried, including the building of a fence around the cemetery, and paragraph 19 provided future sales of the property shall be subject to the judgment, and included the specific requirement that any future purchasers or owners of the property shall be responsible for the maintenance, upkeep and repair of the pet cemetery, no less than weekly.

At some point possibly in 2013 or 2014, Liren Wang and Hui Zhou purchased the property from MacIntosh, although the record is unclear as to the date of the transfer or the terms of the transfer, aside from what Wang asserted in his declaration in opposition to a motion for a cease and desist re trespass.[3]  Wang acknowledged in that document

---

[3] The record is unclear about Wang's and Zhou's status because they failed to include record cites in the Appellant's Opening Brief or the exhibits to his filings in the trial court which might have clarified their status.  We thus have no evidence of their ownership interests in the property, nor the date it was acquired.  The Respondent's Brief indicates that the date of the transfer of ownership was in 2013, citing to Wang's and Zhou's opposition to the motion for a cease and desist re trespass proceeding, but that document reflects that Wang purchased the property in 2014.

Normally, a defective brief such as this could have been stricken for noncompliance with California Rules of Court, rule 8.204(a)(1)(C).  (See Cal. Rules of Court, rule 8.18.)  However, that would merely delay the already protracted case.  Where Wang and Zhou make factual assertions in their brief without appropriate record references, we may disregard them.  (*Liberty National Enterprises, L.P. v. Chicago Title Ins.* (2011) 194 Cal.App.4th 839, 846.)

that in the same year Allen contacted him about the nonconforming use of the property in 2014, although the record does not include the declaration from which he quotes, apparently appended to Allen's motion for appointment of a receiver, because he did not include it in the record on appeal.

In December 2016, Allen filed a motion for an order to show cause re appointment of receiver for non-compliance with the judgment, alleging that the owners have failed to maintain the pet cemetery as required by the judgment and CCRs, which were a matter of record. In opposition, Wang and Zhou filed a special opposition, challenging the court's jurisdiction over them only, on the grounds they were not parties to the original action giving rise to the CCRs.

On February 15, 2017, the trial court concluded it had jurisdiction over Wang and Zhou as subsequent owners under the terms of the CCRs, and, because Wang and Zhou made no substantive opposition to the appointment of a receiver, the court found Wang and Zhou were in violation of the judgment, granted Allen's application, and ordered Wang and Zhou to deliver possession of the property to Michael West, who was appointed as receiver. Wang appealed that judgment, but the appeal was dismissed as abandoned on June 12, 2017. That judgment is now final.

Allen filed a motion for attorney's fees incurred in connection with the motion to appoint the receiver on August 15, 2017, which Wang opposed on the ground the trial court lacked jurisdiction over Wang and Zhou, and argued that because Allen waited 14 years to demand fence installation, she was barred by laches and the statute of limitations.

5

On November 29, 2017, the trial court granted Allen's motion, awarding fees in the amount of $12,467.50.

In the meantime, the receiver was also experiencing difficulty in working with Wang on bringing the pet cemetery into compliance. One item that remained out of compliance was the lack of a fence around the pet cemetery as required by the original judgment, to prevent vehicles from driving over a portion of the cemetery in seeking access to and from the street. Wang was not in agreement. Allen filed a motion re failure to comply with court's order appointing receiver, detailing actions taken subsequent to the date of the original order appointing the receiver and the original award of attorney's fees.

On September 25, 2018, at the hearing on the motion re noncompliance with the order appointing receiver, Allen again referred to the problem of vehicles using the front section of the property, which belongs to the pet cemetery, as a driveway. She also mentioned that juveniles were going onto the property to smoke marijuana and had caused damage on the premises. The court instructed Allen that the issue was not properly before it, and suggested that as it respected trespassing issues, she should present that to the court in writing. In the meantime, the court ordered Wang to comply with the requirement to build the fence because that provision of the CCRs was not personal to MacIntosh, but, instead, was binding on all subsequent owners. That order is final.

On April 8, 2019, Allen filed a motion for amended attorney's fees, for fees incurred from the dated of the original order through July 31, 2018, at which point she substituted in propria person in the action. In Allen's motion, she pointed out that tow trucks from the towing business behind the pet cemetery were driving over a portion of the cemetery and the lack of a functional gate impaired pet owners who wished to visit the cemetery. Additionally, headstones for Allen's pet's grave as well as other graves had been moved, and other items previously ordered were still incomplete. Wang opposed the motion.

On April 16, 2019, Allen filed a motion for encroachment/trespass cease and desist order, as instructed by the trial court at the earlier September 2018 hearing, to stop vehicles from entering or exiting across the front portion of the pet cemetery property, other than pet owners or for pet cemetery business. The motion explained that the owners, Wang and Zhou, had allowed vehicles going to and from the towing business to drive across pet cemetery property, encroaching on it.

On May 29, 2019, Wang and Zhou opposed the motion for the cease and desist order on the ground of laches. After the hearing on June 11, 2019, the court heard both the motion for amended attorney's fees and the motion for the cease and desist order. The court denied the motion for amended attorney's fees on the ground that Allen did not prove the fees were incurred to enforce the CCRs, and because there was no declaration from counsel to support the fees sought.

As for the motion for the encroachment/trespass cease and desist order, the court concluded there was no laches because any delay by Allen in raising the issue of trespass was excused where she was under no obligation to monitor the property, and granted the order as against the owner.

On July 22, 2019,[4] Wang and Zhou made a motion for attorney's fees based on the fact the court denied Allen's motion for an amended fee order. On August 26, 2019, the court heard the motion, and, after taking the matter under submission, denied it because the attorney's fees were not incurred to insure the maintenance and upkeep of the pet cemetery, as provided in the attorney fee provision of the 2002 CCRs and judgment.

On July 31, 2019, Wang and Zhou filed a notice of appeal from the order granting the cease and desist order respecting the trespass and encroachment issue. On September 17, 2019, Wang and Zhou filed a notice of appeal from the order denying their motion for attorney's fee.

## DISCUSSION

1.    *The Trial Court Properly Granted Allen's Motion for a Cease and Desist Order Respecting the Trespass.*

Wang and Zhou argue that the trial court erred in granting Allen's cease and desist order because of her delay in bringing the motion, constituting laches. We disagree.

---

[4] Because Wang and Zhou did not provide a conformed copy of the motion in the Appellant's Appendix, it was necessary for us to verify the actual filing of the motion by cross-referencing with the register of actions.

8

We begin by observing that the briefing has not been particularly helpful on this issue. The narrow question posed in this case is whether Allen prejudicially delayed the bringing of her motion for a cease and desist order respecting a violation of her rights (and those of other pet cemetery plot owners) under the CCRs, where the CCRs run with the land, were duly recorded prior to Wang and Zhou acquiring the property, and which was binding on all owners in perpetuity.

"'Laches is an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable.' [Citation]" (*Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 312.) A civil action seeking injunctive relief is equitable in nature. (*People v. Sangiacomo* (1982) 129 Cal. App. 3d 364, 367.)

"The affirmative defense of laches may be applied to bar relief to a plaintiff who has delayed unduly in seeking equitable relief." (*Comm. to Save the Beverly Highlands Homes Ass'n v. Beverly Highlands Homes Ass'n* (2001) 92 Cal.App.4th 1247, 1266, citing *Concerned Citizens of Palm Desert, Inc. v. Board of Supervisors* (1974) 38 Cal. App.3d 257, 265.) The existence of laches is generally a factual question, and the trial court is given great discretion in determining whether to apply laches to bar relief. (*Concerned Citizens of Palm Desert, supra,* 38 Cal.App.3d at p. 265.)

The key question is whether defendants have demonstrated prejudice, making it unjust to grant relief to plaintiffs. (*San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 607.) "'Mere lapse of time, other than that

prescribed by [statutes of limitations], does not bar relief.' [Citation.]" (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 904.) "The fact that determination of a controversy involves an investigation of rights originating many years past does not render a claim stale." (*Maguire v. Hibernia S. & L. Soc*. (1944) 23 Cal.2d 719, 736-737.) This is particularly true when rights to enforce CCRs, which are operative in perpetuity, are involved.

A covenant is an obligation, which, when "contained in grants of estates in real property, are appurtenant to such estates, and pass with them, so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them. Such covenants are said to run with the land." (Civ. Code § 1460.) A covenant that runs with the land will ". . . bind the assigns of the covenantor and [. . .] vest in the assigns of the covenantee, in the same manner as if they had personally entered into them." (Civ. Code, § 1460.)

"The primary characteristic of a covenant running with the land is that both liability upon it and enforceability of it pass with the transfer of the estate." (*Anthony v. Brea Glenbrook Club* (1976) 58 Cal.App.3d 506, 510.) "The benefits or burdens pass by implication of law rather than under principles of contract." (*Ibid.*)

"At common law, enforceable equitable servitudes and covenants running with the land were confined to restrictions that benefited or burdened land." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US), LLC* (2012) 55 Cal.4th 223, 253-254,

10

see also *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 352–355.) This rule still applies.

Whether it is considered a covenant running with the land or an equitable servitude, a restriction enforceable under these doctrines and the statutes embodying them must involve a restriction governing land use. (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 380 ["[E]quitable servitudes permit courts to enforce promises restricting land use when there is no privity of contract . . . ."]; see also, *Anthony v. Brea Glenbrook Club* (1976) 58 Cal.App.3d 506, 510.) The CCRs recorded in this case specifically provide that they run with the land and operate as an equitable servitude.

There is precious little authority specifically governing the limitations period on one's right to enforce CCRs, and Wang and Zhou cite none. Code of Civil Procedure, section 336, provides a five year statute of limitations for violations of a restriction on the use of land, such as a covenant, and indicates the time runs from the date the violation was discovered, insofar as CCRs remain enforceable indefinitely. However, the order appealed from here was an equitable order for injunction based on a trespass arising from a violation of CCRs, and the point asserted in the trial court as well as in this appeal is that Allen was guilty of laches in bringing the equitable action to cease and desist the trespass. There is a three year statute of limitations for actions for trespass upon or injury to real property. (Code Civ. Proc. § 338, subd. (b).) This action was brought within three years of the trespass incidents alleged.

As for the violations of covenants, case law suggests that the statute of limitations to enforce affirmative covenants running with the land, and, in particular, duties included in a declaration of CCRs, commences when a demand for performance is made. (*Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1387.) In *Cutujian,* the court applied a four-year limitations period, commencing with plaintiff's demand. (*Ibid.*)

Irrespective of which rule is applied, the record here demonstrates the action was timely where Allen made continuous demands for performance, culminating in the court's 2017 order to comply with the receiver's directions (and to which no laches defense was offered), followed by the 2018 order directing Wang and Zhou to erect the fence. The actions taken by Allen on the covenant violations were taken within five years of the 2018 order which was violated.

Although Allen was under no obligation to act as the pet cemetery CCRs enforcement officer, she diligently informed Wang and Zhou of the CCRs requiring maintenance very soon after they acquired ownership, including the need to build the fence and prevent vehicles from using a portion of the pet cemetery to access the towing business that was situated on the rear of the lot. She worked with the receiver to ensure that repairs and maintenance and other requirements of the CCRs were carried out, in conformity with the 2002 judgment, notwithstanding the fact she was under no duty to do so.

The cease and desist action, based on the trespass, her second action against Wang and Zhou, was filed in April 2019, and was timely under both the statute of limitations and the *Cutujian* analysis where the order directing Wang and Zhou to erect the fence was made in response to Allen's unrequited complaints about vehicles encroaching on the premises within either the five year period of Code of Civil Procedure section 336 or the four year period analyzed in *Cutujian*, or the three year period governing actions for trespass.

As for Wang and Zhou, equity is not on their side. They have persistently resisted complying with their obligations under the CCRs, as well as the judgment of the superior court directing the erection of the fence, so they come to this court with unclean hands. (*Jay Bharat Developers, Inc. v. Minidis* (2008) 167 Cal.App.4th 437, 445.) The trial court correctly ruled that Allen was not barred by principles of laches from bringing the motion for an order to cease and desist the trespass and/or encroachment on the pet cemetery.

     2.     *The Trial Court Properly Denied Wang's Motion for Attorney's Fees.*

Wang and Zhou argue the court improperly denied their motion for attorney's fees incurred in opposing Allen's motion for an amended order for attorney's fees. We disagree.

The normal standard of review of an order relating to attorney's fees is abuse of discretion. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) "However, de novo review of such a trial court order is warranted, where the

13

determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175, citing *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

Wang and Zhou ostensibly claim entitlement to attorney's fees as prevailing parties, without ever acknowledging Code of Civil Procedure section 1021, which provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." Code of Civil Procedure section 1021 is a codification of the rule that is commonly referred to as the "American Rule," which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees. (See, e.g., *Trope v. Katz* (1995) 11 Cal.4th 274, 278.)

Civil Code section 5975 is one exception to the rule, providing, in part, that in an action to enforce the governing documents of CCRS, the prevailing party shall be awarded reasonable attorney's fees and costs. (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142.) But a motion to amend a prior attorney fee award is not an action to enforce CCRs, nor was Wang and Zhou's opposition to the motion capable of description in terms of Civil Code section 5975.

Thus, it cannot be said that their motion constituted an "action to enforce the governing documents" respecting the CCRs' such as would entitle them to attorney's

fees.  Moreover, because they were the losing parties in the underlying proceeding to appoint the receiver to enforce the CCRs, Wang and Zhou were not entitled to attorney's fees under the terms of either the CCRs or Civil Code section 5975.

Wang and Zhou make no attempt to argue they are entitled to attorney's fees under the CCRs or that they were prevailing parties in an action to enforce the obligations imposed on them by the CCRs.  They have cited no authority for the proposition that opposing a motion relating to another party's attorney's fee request qualifies as being a "prevailing party."  Instead, they argue that, "NOWHERE in CC&R says the action that can be awarded attorney fees must be related to the preserving the Pet Cemetery and ensuring that the Cemetery is maintained to the level of a human cemetery."  [*Sic*]  Their focus is misdirected.

The real question to be addressed in a motion for attorney's fees is whether the party claiming the fees has demonstrated either a contractual or statutory right to seek such a recover.  After all, courts "have uniformly held that the party moving for statutory attorney fees or sanctions has the burden of proof."  (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 926, citing *Weisman v. Bower* (1987) 193 Cal.App.3d 1231, 1236.)  Wang and Zhou have not met their burden.  Absent any other authority giving rise to a right to seek attorney's fees, the trial court correctly concluded they were not so entitled in denying their motion.

There was no abuse of discretion.

**DISPOSITION**

The judgment is affirmed. Allen is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

We concur:

McKINSTER _____
J.

MILLER _____
J.